**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**LETICIA VILLARREAL**                                                              **PLAINTIFF**

**v.**                              **Case No.  1:16-cv-00163 KGB**

**KENNETH DEWITT,** *et al.*                                        **DEFENDANTS**

## OPINION AND ORDER

Before the Court is a motion for summary judgment filed by separate defendants Warden Nurzuhal Foust, Tonya Gates, Linda Dixon, and Phillip Allen, all of whom were employed at relevant times by the Arkansas Department of Correction ("ADC defendants") (Dkt. No. 71). Plaintiff Leticia Villarreal opposes the motion (Dkt. No. 74).  ADC defendants filed a reply (Dkt. No. 77).  For the following reasons, the Court grants the ADC defendants' motion for summary judgment (Dkt. No. 71).

The ADC defendants also move to dismiss certain individual defendants named only in separate plaintiff Carolyn Arnett's complaint, not in Ms. Villarreal's operative amended complaint (Dkt. No. 82).  The Court grants the ADC defendants' motion to dismiss certain individual defendants named only in separate plaintiff Ms. Arnett's complaint and dismisses without prejudice as defendants as to Ms. Villarreal's claims only separate defendants Larry Norris, Ray Hobbs, Wendy Kelley, John Maples, Maggie Capel, Christopher Budnik, Linda Dykes, John Mark Wheeler, Don Yancey, and Jennifer Smith (Dkt No. 82).

### I.      Procedural History

Ms. Villarreal filed her operative amended complaint against former ADC Chaplain Kenneth Dewitt, Alva Yancy, Kristina Gates, Stacey Smith, and the ADC defendants on

September 5, 2017 (Dkt. No. 21).[1]   Ms. Villarreal alleged that, at all times relevant to the complaint, the ADC defendants were employed by the ADC, and she sued Mr. Dewitt and the ADC defendants in their individual capacities (Dkt. No. 21, ¶ 2–3).   Ms. Villarreal alleges that she was sexually abused repeatedly by former ADC Chaplain Mr. Dewitt, that ADC defendants and others failed to protect her from such abuse, and that ADC defendants and others retaliated against her (Dkt. No. 21).   Ms. Villarreal seeks compensatory and punitive damages (*Id.*, at 24).   She brings claims her claims under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-105 *et seq*. ("ACRA") for violations of her "constitutional rights to Due Process of law and her right to privacy," and her Eighth Amendment right to be free from cruel and unusual punishment; for negligent training, supervision, and retention; and outrage (*Id.*, at 19–24).

On September 7, 2017, separate plaintiff Carolyn Arnett also filed a complaint pursuant to 42 U.S.C. §§ 1983 and 1985, alleging that she was sexually abused repeatedly by former ADC Chaplain Kenneth Dewitt, that ADC defendants and others failed to protect her from such abuse, and that ADC defendants and others retaliated against her and continue to retaliate against her (Dkt. No. 1).[2]

---

[1]   Ms. Villarreal also names as defendants John Does 1 through 20 (Dkt. No. 21, ¶ 4).  At no time since the filing of her operative amended complaint has Ms. Villarreal moved to amend to name the John Doe defendants nor has Ms. Villarreal filed proof of service of the operative amended complaint on any John Doe defendant.  By separate Order, the Court directed Ms. Villarreal to show good cause for her failure to identify or serve the John Doe defendants to date (Dkt. No. 92).  On March 29, 2022, Ms. Villarreal filed a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) (Dkt. No. 96).  Ms. Villareal moves to dismiss her claims against all fictitiously named Doe defendants without prejudice (*Id.*).  For good cause shown, the Court adopts the notice of voluntary dismissal and dismisses without prejudice Ms. Villareal's claims against the unidentified John Doe defendants.

[2]   *Arnett v. Norris*, Case No. 1:17-cv-00076 (Dkt. No. 1).

On March 31, 2018, this Court consolidated Ms. Arnett's case, *Arnett v. Norris, et al.*, Case No. 1:17-cv-00076-KGB, with *Villarreal v. DeWitt, et al.*, Case No. 1:16-cv-00163-KGB, and directed all parties to make filings only in the *Villarreal* case going forward (Dkt. No. 34).[3]  On May 4, 2020, in response to a motion filed by Ms. Arnett, the Court granted Ms. Arnett's request to dismiss without prejudice voluntarily her then-pending claims (Dkt. No. 42).[4]  Ms. Arnett then refiled her complaint on May 4, 2021, *Arnett v. DeWitt, et al.*, Case No. 3:21-cv-00088-KGB.  Ms. Arnett names as defendants Larry Norris, Ray Hobbs, Wendy Kelley, Linda Dixon, John Maples, Maggie Capel, Nurzuhal Foust, Christopher Budnik, Linda Dykes, John Mark Wheeler, Kenneth DeWitt, Don Yancey and Stacey Smith, all in their individual capacities (Dkt. No. 1).[5]  Ms. Arnett seeks compensatory and punitive damages (*Id.*, at 45).

On September 5, 2018, this Court granted in part and denied in part the ADC's motion to dismiss Ms. Villareal's operative complaint (Dkt. Nos. 23, 40).  The Court denied qualified immunity at that stage of the proceedings as to the ADC defendants and dismissed without prejudice Ms. Villareal's claims against Sergeant Allen and Ms. Gates for negligent training, supervising, or retaining Mr. DeWitt (Dkt. No. 40, at 12, 14).

The ADC defendants filed a motion for summary judgment only as to Ms. Villarreal's claims (Dkt. No. 71).  The Court addresses that motion in this Order.

Given the procedural history in this case, the ADC defendants also move to dismiss certain individual defendants named only in separate plaintiff Ms. Arnett's complaint, not in Ms. Villarreal's operative amended complaint (Dkt. No. 82).  Ms. Villarreal has not responded to this

---

[3]  *Arnett v. Norris*, Case No. 1:17-cv-00076 (Dkt. No. 34).

[4]  *Arnett v. Norris*, Case No. 1:17-cv-00076 (Dkt. No. 42).

[5]  *Arnett v. DeWitt, et al.*, Case No. 3:21-cv-00088 (Dkt. No. 1).

motion to dismiss, and the time for responding has passed.  Further, Ms. Villarreal did not bring claims against the individual defendants identified in the ADC defendants' pending motion (Dkt. Nos. 21, 82).  For good cause shown, the Court grants the ADC defendants' motion to dismiss certain individual defendants named only in separate plaintiff Ms. Arnett's complaint and dismisses without prejudice as defendants as to Ms. Villarreal's claims only separate defendants Larry Norris, Ray Hobbs, Wendy Kelley, John Maples, Maggie Capel, Christopher Budnik, Linda Dykes, John Mark Wheeler, Don Yancey, and Jennifer Smith  (Dkt No. 82).

## II.     Factual Background

These facts are taken from the ADC defendants' statement of facts pursuant to Local Rule 56.1 in support of their motion for summary judgment (Dkt. No. 73), unless otherwise noted.[6]

Ms. Villarreal was formerly incarcerated in the Arkansas Department of Correction at the McPherson Unit, serving a sentence for a felony conviction (Dkt. No. 73, ¶ 1).  She received a 40 year sentence but was paroled after serving 10 years (*Id.*, ¶ 2).  Immediately following her conviction, Ms. Villarreal was housed at the Pulaski County Jail.  She transferred to the McPherson Unit in 2006 (*Id.*, ¶ 3).

---

[6] Pursuant to Local Rule 56.1 of the Local Rules of the United States District Court for the Eastern District Courts for the Eastern and Western Districts of Arkansas, a non-moving party who opposes the motion for summary judgment is to file "a separate, short and concise statement of the material facts as to which it contends a genuine dispute exists to be tried," Local Rule 56.1(b), and the Court is to deem admitted all material facts set forth by the moving party unless controverted by the statement filed by the non-moving party, Local Rule 56.1(c).  Ms. Villarreal failed to file a separate, short and concise statement of the material facts as to which she contends a genuine dispute exists to be tried and failed to controvert the ADC defendants' statement of facts (Dkt. No. 73).  The ADC defendants point this out in their reply (Dkt. No. 77).  As a result, the Court deems the ADC defendants' statement of facts admitted (Dkt. No. 73).

After arriving at the McPherson Unit, Ms. Villarreal was provided an inmate handbook (*Id.*, ¶ 4). In her assigned Barracks was a Prison Rape Elimination Act ("PREA") hotline phone (*Id.*, ¶ 5). She also had access to a telephone to call her children and a family friend (*Id.*, ¶ 6).

Ms. Villarreal was also aware that the ADC had an inmate grievance policy and procedure (*Id.*, ¶ 7). Ms. Villarreal only wrote one grievance during her incarceration (*Id.*, ¶ 8). The sole grievance related to a medical issue (*Id.*, ¶ 9).

According to Ms. Villarreal, when she arrived at the McPherson Unit, Wardens Maggie Capel and John Maples were the Unit Wardens (*Id.*, ¶ 10). Ms. Villarreal has never had a conversation with Maggie Caples (*Id.*, ¶ 11). Ms. Villarreal has never had a conversation with John Maples (*Id.*, ¶ 12).

Ms. Villarreal arrived at the McPherson Unit in 2006 and began the PAL Program in 2007 (*Id.*, ¶ 13). She learned about the PAL Program from a fellow inmate, Antonia Booker (*Id.*, ¶ 14). The typical day for PAL participants included: (a) 5:00 a.m. wake up, (b) 6:00 a.m. begin classes, (c) 7:00 a.m. teaching lead by ADC Chaplain Mr. Dewitt, (d) 9:00 a.m. additional classes, (e) 12:00 p.m. lunch, (f) 1:00 p.m. additional classes, and (g) 3:00 p.m. program ends for the day (*Id.*, ¶ 15). Ms. Villarreal eventually discontinued her participation in the PAL Program because she did not yet believe in the religious principles, including a belief in God, being taught in the program (*Id.*, ¶ 16). She never raised any complaints about Mr. Dewitt during her participation in the PAL program (*Id.*, ¶ 17).

In or around June 2007, Ms. Villarreal began working for the Unit's school/GED program (*Id.*, ¶ 18). Prior to working in the GED program, Ms. Villarreal had been assigned to the Kitchen, Hoe Squad, and Segregation (*Id.*, ¶ 19). When Ms. Villarreal was assigned to the Kitchen, she

reported to work at 1:00 a.m. by standing at the door, reporting to the officer where she was going, and exiting the barracks (*Id.*, ¶ 20).

If Ms. Villarreal needed to report to the infirmary for a medical appointment, then medical would contact the officer at the Barrack and advise that Ms. Villarreal needed to report to medical (*Id.*, ¶ 21).   According to Ms. Villarreal, the process for medical appointments was the same protocol for similar circumstances such as mental health appointments (*Id.*, ¶ 22).

Between 2007 and 2012, Ms. Villarreal reenrolled into the PAL program several times (*Id.*, ¶ 23).   Each time she reenrolled into the program it was voluntary (*Id.*).   She did not have any inappropriate interactions with Mr. Dewitt during those times (*Id.*, ¶ 24).   During that time, she attended PAL classes in the mornings and worked in the GED program in the afternoons (*Id.*, ¶ 25).

In 2012, Mr. Dewitt called Ms. Villarreal in his office to discuss an opportunity for new training (*Id.*, ¶ 26).   He advised Ms. Villarreal to report to his office the following Monday at 6:00 a.m. (*Id.*, ¶ 27).   Every Monday morning for the following 18 months,  Mr. Dewitt sexually abused Ms. Villarreal (Dkt. Nos. 73, ¶ 28, 71-1 at 49–50).   According to Ms. Villarreal, Mr. Dewitt had arranged his office to obstruct the window by placing boxes on a table or opening a file cabinet drawer to cover the window (Dkt. No. 73, ¶ 29).   Additionally, at 6:00 a.m., the unit performed a mandatory count of the inmates.   During this time, there was not a lot of movement in the prison to ensure an accurate count of the inmates (*Id.*, ¶ 30).   Mr. Dewitt would count Ms. Villarreal as present and working in his office to account for her whereabouts (*Id.*, ¶ 31).

During the entire time that Mr. Dewitt abused Ms. Villarreal, she did not report the abuse to a single person (*Id.*, ¶ 32).   On one occasion, Ms. Villarreal became upset in class after Stacey

Smith[7] told Ms. Villarreal that she knew about her and Mr. Dewitt (*Id.*, ¶ 33). Gates called Ms. Villarreal to her office, but Ms. Villarreal refused to tell Gates anything (*Id.*). Mr. Dewitt was out of town at this time (*Id.*, ¶ 34). According to Ms. Villarreal, when Mr. Dewitt returned to the unit, he confronted Ms. Villarreal about her conversation with Stacey Smith (*Id.*, ¶ 35). Ms. Villarreal returned to her Barracks, and Sergeant Phillip Allen was standing by the door (*Id.*, ¶ 36). Ms. Villarreal pushed into Sergeant Allen (*Id.*). Ms. Villarreal was issued a disciplinary (*Id.*, ¶ 37).

Ms. Villarreal saw Mr. Dewitt on the day of the pushing incident and one other occasion (*Id.*, ¶ 38). However, she did not see him again after that, on or about September 11, 2014 (*Id.*). Mr. Dewitt left his employment with ADC in July 2014 (*Id.*, ¶ 39).

Prior to that incident, all of Ms. Villarreal's conversations with Gates related solely to school and were not personal (*Id.*, ¶ 40). They were not about Mr. Dewitt (*Id.*, ¶ 41).

The first time Ms. Villarreal reported to anyone the incidents involving Mr. Dewitt was on December 29, 2014 (*Id.*, ¶ 42). A fellow inmate asked Ms. Villarreal if Mr. Dewitt touched her in a sexual manner, and Ms. Villarreal admitted that he did (*Id.*, ¶ 43). The inmate reported the conversation to Chaplain Jennifer Smith, who then spoke to Ms. Villarreal about the incidents (*Id.*, ¶ 44). Captain Linda Dykes began an investigation of Ms. Villarreal's complaints on December 29, 2014 (*Id.*, ¶ 45).

On or about that same date, the matter was reported to ADC Internal Affairs, who then turned it over to the Arkansas State Police (*Id.*, ¶ 46). Ms. Villarreal then wrote a statement about the incidents involving Mr. Dewitt (*Id.*, ¶ 47). In her statement, Ms. Villarreal admits that she may have hit Sergeant Allen on the day she returned upset to her Barracks (*Id.*, ¶ 48).

---

[7]   The ADC defendants refer to "Stacy Smith" in their statement of facts, but from the docket, the Court understands the correct spelling of Ms. Smith's first name to be Stacey (Dkt. No. 73, ¶¶ 33–34, 58).

In or around July 2013, Ms. Villarreal had a hysterectomy (*Id.*, ¶ 49).  She did not report to the doctor that Mr. Dewitt was sexually abusing her (*Id.*).  Prior to her hysterectomy, Ms. Villarreal received medical treatment several times for yeast infections (*Id.*, ¶ 50).  She did not report to any of the medical providers treating her that Mr. Dewitt was sexually abusing her (*Id.*).  No medical provider ever diagnosed Ms. Villarreal with a sexually transmitted infection (*Id.*, ¶ 51).

Ms. Villarreal never filed any grievances about sexual assault while she was incarcerated at the ADC (*Id.*, ¶ 52).  She never filed any grievances against Mr. Dewitt while incarcerated (*Id.*, ¶ 53).  Other than Carolyn Arnett, Ms. Villarreal is unaware of any other complaints of sexual misconduct involving Mr. Dewitt and inmates (*Id.*, ¶ 54).  Ms. Villarreal never disclosed the incidents involving Mr. Dewitt to other inmates at the time they were occurring (*Id.*, ¶ 55).  No other inmate disclosed their involvement with Ms. Villarreal (*Id.*, ¶ 56).  Ms. Villarreal did not report the sexual assaults to any ADC official, including all named defendants in this case (*Id.*, ¶ 57).  Prior to writing her December 29, 2014, statement, Ms. Villarreal did not tell anyone about her conversation with Stacey Smith (*Id.*, ¶ 58).  Ms. Villarreal only filed one grievance about her medical care (*Id.*, ¶ 59).

Following her release from prison in 2015, Ms. Villarreal was permanently deported to Mexico (*Id.*, ¶ 60).  Accordingly, she is prohibited from seeking reentry into the United States (*Id.*).

The ADC has a policy concerning the PREA (*Id.*, ¶ 61).  The ADC has a "zero tolerance" policy regarding rape or sexual abuse of inmates by staff or other inmates (*Id.*, ¶ 62).  As a part of its zero tolerance PREA policy, the ADC annually reviews and/or adopts new policies and procedures to address the elimination of rape and sexual assault, including:    Staff

Training/Education; Inmate Education; Victim Support; Investigation Procedures/Training; Reporting Mechanisms and Confidentiality Issue; Prosecution of Perpetrators; Prevention; and Continuity of Counseling (*Id.*, ¶ 63).  The ADC's PREA Administrative Directive, AD 11-63, includes a PREA checklist to ensure that PREA victims receive appropriate care and that investigators are able to secure evidence to increase the chances of apprehending perpetrators (*Id.*, ¶ 64).

As a part of its annual security audits, each facility assesses adequate staffing and video monitoring to protect inmates from sexual assaults (*Id.*, ¶ 65).  New inmates receive oral and written information on the ADC's zero tolerance policy related to sexual abuse (*Id.*, ¶ 66). Accommodations are made for those not fluent in English, persons with disabilities, and low literacy rates (*Id.*).  When inmates allege sexual abuse, they are monitored to ensure that there is no retaliation for making such report (*Id.*, ¶ 67).

The ADC also has a policy, Administrative Directive 07-42, expressly prohibiting employees from engaging in intimate relationships with inmates (*Id.*, ¶ 68).  Administrative Directive 07-42 prohibits sexual harassment and sexual assault, and included a mandatory reporting requirement (*Id.*, ¶ 69).  All allegations of employee related sexual assault are promptly investigated and immediately reported to Internal Affairs (*Id.*, ¶ 70).  Staff are trained on the policy and a copy is maintained in the unit law library (*Id.*).

### III.   Request Pursuant To Federal Rule Of Civil Procedure 56(d)

Ms. Villarreal contends that the Court should not consider ADC defendants' motion for summary judgment until after she has the opportunity to conduct additional discovery (Dkt. No. 74, at 4–9).  The ADC defendants oppose her request (Dkt. No. 77).

Federal Rule of Civil Procedure 56(d) provides, in pertinent part:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> > (1) defer considering the motion or deny it;
> >
> > (2) allow time to obtain affidavits or declarations or to take discovery; or
> >
> > (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).[8]  "As a general rule, summary judgment is proper 'only after the nonmovant has had adequate time for discovery.'"  *Hamilton v. Bangs, McCullen, Butler, Foye & Simmons, L.L.P.*, 687 F.3d 1045, 1049 (8th Cir. 2012) (quoting *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530 (8th Cir. 1999)).  "Nonmovants may request a continuance under Rule 56( [d] ) until adequate discovery has been completed if they otherwise cannot present facts sufficient to justify their opposition.  This option exists to prevent a party from being unfairly thrown out of court by a premature motion for summary judgment." *Id.* at 1050 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)).  "To obtain a Rule 56 ( [d] ) continuance, the party opposing summary judgment must file an affidavit 'affirmatively demonstrating . . . how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'"  *Ray v. American Airlines, Inc.*, 609 F.3d 917, 923 (8th Cir. 2010) (quoting *Humphreys v. Roche Biomedical Lab., Inc.*, 990 F.2d 1078, 1081 (8th Cir. 1993)).

The ADC defendants represent that they filed their pending motion for summary judgment after the close of merits discovery in Ms. Villarreal's case, and the Court agrees (Dkt. Nos. 67 (setting discovery deadline for December 9, 2020); 68 (requesting on behalf of ADC defendants

---

[8]  Federal Rule of Civil Procedure 56(d) provides the procedure for a nonmovant who is unable to "present facts essential to justify its opposition."  This was previously governed under Rule 56(f).  *See* Fed. R. Civ. P. 56 2010 Amendments ("Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).").

an extension of the time to file disposition motions and status report); 69 (granting ADC defendants' motion); 70 (setting in a Fourth Amended Final Scheduling Order revised dates for filing disposition motions and a revised trial date; no revised discovery dates set)).  Further, although she maintains additional discovery is necessary in her response to ADC defendants' motion for summary judgment, Ms. Villarreal has not filed an affidavit in compliance with Federal Rule of Civil Procedure 56(d).  The party seeking additional discovery must show:  "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion."  *State of Cal., on Behalf of Cal. Dep't of Toxic Subs. Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998); *see also Chambers v. Travelers Cos.*, 668 F.3d 559, 568 (8th Cir. 2012).  Ms. Villarreal has identified no documents or specific facts she believes would contradict the ADC defendants' key points supporting their request for summary judgment in their favor. *Keebler Co. v. Murray Bakery Prods.*, 866 F.2d 1386, 1389 (Fed.Cir. 1989) ("If all one had to do to obtain a grant of a Rule 56( [d] ) motion were to allege possession by movant of 'certain information' and 'other evidence,' every summary judgment decision would have to be delayed while the non-movant goes fishing in the movant's files.").  Merely asserting that additional discovery is necessary does not suffice.  *United States v. C.E. Light*, 766 F.2d 394, 397 (8th Cir. 1985) (the party seeking additional discovery must affirmatively demonstrate how it will allow her "to rebut the movant's showing of the absence of a genuine issue of fact").  There are no outstanding motions to compel responses to discovery previously propounded by Ms. Villarreal and no outstanding requests to extend the time to complete discovery in this matter by Ms. Villarreal, aside from the arguments she makes in opposition to the pending summary judgment motion.

This Court has wide discretion when ruling on a Rule 56(d) motion. *See Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 893–96 (8th Cir. 2014); *Heartland Bank v. Heartland Home Fin., Inc.*, 335 F.3d 810, 815 (8th Cir. 2003) ("We have characterized this review as very deferential and stressed that we will not interfere with the great latitude exercised by the district court in discovery matters.") (internal quotation marks omitted); *Stringfellow v. Perry*, 869 F.2d 1140, 1143 (8th Cir. 1989) ("District courts are afforded wide discretion in their handling of discovery matters."). The Court denies Ms. Villarreal's request pursuant to Rule 56(d). The Court determines that ADC defendants' motion for summary judgment is ripe for consideration.

## IV.    Legal Standards

### A.    Summary Judgment

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact in dispute and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 447 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed,

and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B.    Claims Pursuant To 42 U.S.C. § 1983 And Qualified Immunity

"To state a claim under [§ 1983], a plaintiff must allege (1) that the defendant acted under color of state law, and (2) that the alleged conduct deprived the plaintiff of a constitutionally protected federal right." *Van Zee v. Hanson*, 630 F.3d 1126, 1128 (8th Cir. 2011).

Officials sued under 42 U.S.C. § 1983 in their individual capacities can raise qualified immunity as a defense. This doctrine "shields a government official from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Partlow v. Stadler*, 774 F.3d 497, 501 (8th Cir. 2014). Courts use a two-step inquiry to determine whether qualified immunity applies: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Id.* Courts may begin the analysis with either step. *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015). If a plaintiff cannot satisfy both prongs, then the defendant is entitled to qualified immunity. *See Correia v. Jones*, 943 F.3d 845, 847 (8th Cir. 2019).

### C.    ACRA Claims And Qualified Immunity

Ms. Villarreal also brings claims pursuant to the ACRA. The ACRA prohibits persons, acting under color of state law, from depriving any person of any rights, privileges, or immunities secured by the Arkansas Constitution. Ark. Code Ann. § 16-123-101, *et seq.*; *see also West v. Atkins*, 487 U.S. 42 (1988). The ACRA expressly requires that courts look to federal civil rights law for guidance. *See Island v. Buena Vista Resort*, 103 S.W.3d 671, 675–76 (Ark. 2003).

Officers and employees of the State of Arkansas are immune from liability and from suit, except to the extent that they may be covered by liability insurance, for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment. Ark. Code Ann. § 19-10-305(a). The Arkansas Supreme Court "has recognized that the immunity provided by Ark. Code Ann. § 19-10-305. . . is similar to that provided by the Supreme Court for federal civil-rights claims." *Fegans v. Norris*, 89 S.W.3d 919, 924 (Ark. 2002). "In interpreting § 19-10-305, [the Arkansas Supreme Court] ha[s] traditionally been guided by the analysis adopted by the United States Supreme Court for qualified-immunity claims in federal civil-rights actions." *City of Fayetteville v. Romine*, 284 S.W.3d 10, 13 (Ark. 2008) (citing *Fegans*, 89 S.W.3d at 919).

Under that analysis, a motion for summary judgment based upon qualified immunity is precluded only when the plaintiff has asserted a constitutional violation, demonstrated the constitutional right is clearly established, and raised a genuine issue of fact as to whether the official would have known that the conduct violated that clearly established right. An official is immune from suit if his or her actions did not violate clearly established principles of law of which a reasonable person would have knowledge. The objective reasonable-person standard utilized in qualified-immunity analysis is a legal inquiry. *Romine*, 284 S.W.3d at 13–14.

"Further, employees and officers of the State [of Arkansas] are afforded statutory immunity from civil liability and from suit for nonmalicious acts occurring within the course of their employment." *Ark. State Med. Bd. v. Byers*, 521 S.W.3d 459, 463 (Ark. 2017). "Thus, for a plaintiff to counter an assertion of [statutory] immunity, he or she must allege sufficient facts in his or her complaint to support the claim of malicious conduct by the defendant." *Fuqua v. Flowers*, 20 S.W.3d 388, 391 (Ark. 2000). The Arkansas Supreme Court has defined *malice* as

follows:  "It is true that in law malice is not necessarily personal hate.  It is rather an intent and disposition to do a wrongful act greatly injurious to another."  *Satterfield v. Rebsamen Ford, Inc.*, 485 S.W.2d 192, 195 (Ark. 1972).  Malice is also defined as "the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent. . . .  A conscious violation of the law. . . which operates to the prejudice of another person.  A condition of the mind showing a heart. . . fatally bent on mischief."  *Black's Law Dictionary*, 956–57 (6th ed.1990).

In summary, the "immunity [provided under § 19-10-305] is similar to that provided for federal civil-rights claims except for the non-malicious requirement."  *Smith v. Norris*, No. 4:12-cv-00277-BSM, 2013 WL 12109475, at *2 (E.D. Ark. Nov. 26, 2013) (granting summary judgment on the ACRA claim because the plaintiff produced "no evidence that defendants' actions were malicious"), *aff'd*, 583 F. App'x 563 (8th Cir. 2014) (per curiam).  "[T]he immunity provided by § 19-10-305" is "[m]ore rigorous[ ]" than federal qualified immunity because it "only provides state employees with statutory immunity for non-malicious acts."  *Stoner v. Ark. Dep't of Corr.*, 983 F. Supp. 2d 1074, 1103 (E.D. Ark. 2013).  By contrast, "a defense of qualified immunity [under federal law] may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated.  Evidence concerning the defendant's subjective intent is simply irrelevant to that defense."  *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998).

The Arkansas Supreme Court's decision in *Byers* demonstrates that Arkansas Code Annotated § 19-10-305's "malicious acts or omissions" inquiry is a separate inquiry from traditional federal qualified immunity analysis.  In *Byers*, the court concluded that the defendant was "entitled to statutory immunity because [the plaintiff]. . . failed to demonstrate malice";

therefore, "statutory immunity bar[red] [the plaintiff's] ACRA claims against [the defendant] in her individual capacity." 521 S.W.3d at 464.  While the plaintiff asserted "that statutory immunity did not bar the claims because [the defendant] acknowledged that she 'knew the law' and 'knew she could not retaliate,'" *id.*, the plaintiff never produced evidence of "malice." *Id.* at 465. According to the court, "a bare allegation of willful and wanton conduct is not enough to demonstrate malice." *Id.* at 464.

The Eighth Circuit has also recognized the necessity of a plaintiff producing evidence of malice under Arkansas Code Annotated § 19-10-305. *See, e.g.*, *Boudoin v. Harsson*, 962 F.3d 1034, 1044 (8th Cir. 2020) (holding plaintiff failed to show malice for purposes of Arkansas statutory immunity because he "ha[d] not shown a conscious violation of the law"); *Langford v. Norris*, 614 F.3d 445, 465 (8th Cir. 2010) (granting statutory immunity on plaintiff's state-law claims because the complaint did not "allege that [the state officials] 'acted with malice or beyond the scope of [their] employment'").

Whether a defendant is entitled to qualified immunity under federal law "is not dispositive" of whether a defendant is entitled to statutory immunity under Arkansas law. *See Byers*, 521 S.W.3d at 465.  Applying *Byers*, Ms. Villarreal must satisfy traditional qualified immunity analysis and also show that the ADC defendants had a malicious intent to defeat the ADC defendants' defense of statutory immunity.

## V.   Discussion Of Claims

Ms. Villarreal in her response to the ADC defendants' motion for summary judgment describes her operative amended complaint as asserting the following:  (1) Fourteenth Amendment substantive due process and right to privacy claims against all defendants; (2) Eighth Amendment

cruel and unusual punishment claims against Faust and former ADC Director Wendy Kelley;[9] (3) negligent training, supervision, and retention claims against all ADC defendants; and (4) ACRA claims against all defendants (Dkt. No. 74, at 4).  The Court examines each claim Ms. Villarreal asserts in the light of the ADC defendants' pending motion for summary judgment.

### A.    Fourteenth Amendment Due Process Claims

Ms. Villarreal brings her Fourteenth Amendment due process claim against all ADC defendants.  She characterizes her Fourteenth Amendment claim as one based on substantive due process and right to privacy.[10]  *See Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) ("The Due Process Clause of the Fourteenth Amendment . . . has two components:  the procedural due process and the substantive due process components."); *Hawkins v. Holloway*, 316 F.3d 777, 780 (8th Cir. 2003) ("In addition to providing procedural safeguards when the government seeks to deprive an individual of a protected right, the Fourteenth Amendment to the Constitution protects substantive aspects of an individual's liberty from impermissible government restrictions.") (citing *Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194, 197 (1979)).

The Eighth Circuit Court of Appeals has found on multiple occasions that there is a substantive due process right to bodily integrity or privacy and that state officials can violate that right by committing sexual assault.  *See Haberthur v. City of Raymore, Missouri*, 119 F.3d 720, 723 (8th Cir. 1997) ("A sexual assault can be a constitutional violation under section 1983.  This type of constitutional injury has been described as a violation of the substantive due process right to bodily integrity or privacy, and . . . the right may be violated by sexual fondling and touching

---

[9]    Ms. Villarreal did not name separate defendant Wendy Kelley in the caption as a defendant in her operative amended complaint (Dkt. No. 21).

[10]   The Court previously examined the legal framework for Ms. Villarreal's claims in prior Orders ruling on the ADC defendants' motions to dismiss (Dkt. Nos. 20, 40).

or other egregious sexual contact.") (internal citation omitted).  Furthermore, a state official "faces § 1983 liability in his individual capacity when he fails to act adequately on complaints of sexual abuse if he had notice of a pattern of unconstitutional conduct by subordinates and exhibited deliberate indifference to or tacit authorization of the conduct." *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 800 (8th Cir. 1998).

The Court observes that cases involving the sexual assault of a prisoner by prison officials are typically brought under the Eighth Amendment.[11]  *See Williams v. Prudden*, 67 F. App'x 976, 978 (8th Cir. 2003) (finding that the plaintiff, a convicted prisoner, stated an Eighth Amendment claim against a corrections officer and his supervisors, where the plaintiff alleged that the corrections officer sexually assaulted her and that, "prior to her encounter with [the corrections officer], other inmates at [the prison] had had similar experiences with him and with other [prison] employees, and had made similar complaints, but the supervisors failed to take corrective action"); *Berry v. Oswalt*, 143 F.3d 1127, 1131 (8th Cir. 1998) (analyzing plaintiff's deliberate indifference claims against prison officials under the Eighth Amendment).  The Court is unaware of any authority establishing that such claims *must* be brought under the Eighth Amendment, however, and the Supreme Court has "recognized that the same facts could give rise to both an Eighth Amendment cruel and unusual punishment claim and a substantive due process claim under the Fourteenth Amendment." *Berry v. City of Muskogee, Okl.*, 900 F.2d 1489, 1493 (10th Cir. 1990)

---

[11]  Cases involving the sexual assault of a *pretrial detainee* by prison officials are analyzed under the Due Process Clause, *see Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) ("Because [plaintiff] was a pretrial detainee at the time of the alleged violation, her § 1983 claim is not analyzed under the Eighth Amendment, but instead under the Fourteenth Amendment's Due Process Clause."), but Ms. Villarreal was a convicted prisoner when the alleged events occurred (Dkt. No. 21, ¶¶ 7, 16–24) (stating that, on or about July 14th, 2005, plaintiff was convicted of a controlled substance violation and was sentenced to 40 years in the Arkansas Department of Corrections and that, during January 2013, Mr. Dewitt's allegedly abusive conduct began).

(citing *Whitley v. Albers*, 475 U.S. 312 (1986)).  Prisoners do not lose their rights to substantive

due process simply because they are prisoners.  *See Burton v. Livingston*, 791 F.2d 97, 100–01

(8th Cir. 1986) (finding that a prisoner stated a valid claim against a prison guard under the Due

Process Clause of the Fourteenth Amendment).

However, the Supreme Court has also found that where a prisoner claims that an official's

actions violated both the Eighth and Fourteenth Amendments, "the Eighth Amendment, which is

specifically concerned with the unnecessary and wanton infliction of pain in penal institutions,

serves as the primary source of substantive protection to convicted prisoners[,]" *Whitley*, 475 U.S.

at 327; and "[a]ny protection that 'substantive due process' affords convicted prisoners against

excessive force is . . . *at best* redundant of that provided by the Eighth Amendment." *Graham v.

Connor*, 490 U.S. 386, 395 n.10 (1989) (emphasis added).

In addition, although as a general matter, a state's failure to protect an individual against

private violence does not constitute a violation of the Due Process Clause, one exception to this

principle is the "state-created-danger-theory" under which "'the state owes a duty to protect

individuals if it created the danger to which the individuals are subjected.'" *Fields v. Abbott*, 652

F.3d 886, 890 (8th Cir. 2011) (quoting *Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir.

2005)).  To establish this type of claim, an individual must show that she was "a member of a

limited, precisely definable group," that the state's conduct "put her at a significant risk of serious,

immediate, and proximate harm," that "the risk was obvious or known" to the state, that the state

"acted recklessly in conscious disregard of the risk," and that the state's overall conduct "shocks

the conscience." *Fields*, 652 F.3d at 891 (internal quotations omitted).

To the extent Ms. Villarreal claims that the ADC defendants violated her substantive due

process and right to privacy through the Fourteenth Amendment, on the record evidence before

the Court construing all reasonable inferences in favor of Ms. Villarreal, the Court determines that the ADC defendants are entitled to summary judgment in their favor on this claim.

In this case, it is undisputed that Mr. Dewitt sexually abused Ms. Villarreal during "Monday morning sessions" beginning in 2012 (Dkt. No. 73, ¶¶ 26–28). According to Ms. Villarreal, Mr. Dewitt had arranged his office to obstruct the window by placing boxes on a table or opening a file cabinet drawer to cover the window (*Id.*, ¶ 29). Additionally, at 6:00 a.m., the unit performed a mandatory count of the inmates. During this time, there was not a lot of movement in the prison to ensure an accurate count of the inmates (*Id.*, ¶ 30). Mr. Dewitt would count Ms. Villarreal as present and working in his office to account for her whereabouts (*Id.*, ¶ 31).

Further, it is undisputed that, during the entire time that Mr. Dewitt abused Ms. Villarreal, she did not report the abuse to a single person (*Id.*, ¶ 32). Mr. Dewitt left his employment with ADC in July 2014 (*Id.*, ¶ 39). It is undisputed that the first time Ms. Villarreal reported to anyone the incidents involving Mr. Dewitt was on December 29, 2014, when a fellow inmate asked Ms. Villarreal if Mr. Dewitt touched her in a sexual manner, and Ms. Villareal admitted that he did (*Id.*, ¶¶ 42–43). The inmate reported the conversation to Chaplain Jennifer Smith, who then spoke to Ms. Villarreal about the incidents (*Id.*, ¶ 44). Captain Linda Dykes began an investigation of Ms. Villarreal's complaints on December 29, 2014 (*Id.*, ¶ 45).

On or about that same date, the matter was reported to ADC Internal Affairs, who then turned it over to the Arkansas State Police (*Id.*, ¶ 46). Ms. Villarreal then wrote a statement about the incidents involving Mr. Dewitt (*Id.*, ¶ 47).

In or around July 2013, Ms. Villarreal had a hysterectomy (*Id.*, ¶ 49). It is undisputed that Ms. Villarreal did not report to the doctor that Mr. Dewitt was sexually abusing her (*Id.*). Prior to her hysterectomy, Ms. Villarreal received medical treatment several times for yeast infections (*Id.*,

¶ 50).  She did not report to any of the medical providers treating her that Mr. Dewitt was sexually abusing her (*Id.*).  No medical provider ever diagnosed Ms. Villarreal with a sexually transmitted infection (*Id.*, ¶ 51).

It is undisputed that Ms. Villarreal never filed any grievances about sexual assault while she was incarcerated at the ADC (*Id.*, ¶ 52).  She never filed any grievances against Mr. Dewitt while incarcerated (*Id.*, ¶ 53).  Other than Carolyn Arnett, Ms. Villarreal is unaware of any other complaints of sexual misconduct involving Mr. Dewitt and inmates (*Id.*, ¶ 54).  Ms. Villarreal never disclosed the incidents involving Mr. Dewitt to other inmates at the time they were occurring (*Id.*, ¶ 55).  No other inmate disclosed their involvement with Ms. Villarreal (*Id.*, ¶ 56).  Ms. Villarreal did not report the sexual assaults to any ADC official, including all named defendants in this case (*Id.*, ¶ 57).  Prior to writing her December 29, 2014, statement, Ms. Villarreal did not tell anyone about her conversation with Stacey Smith (*Id.*, ¶ 58).  Ms. Villarreal only filed one grievance about her medical care (*Id.*, ¶ 59).

The ADC has a policy concerning the PREA (*Id.*, ¶ 61).  The ADC has a "zero tolerance" policy regarding rape or sexual abuse of inmates by staff or other inmates (*Id.*, ¶ 62).  As a part of its zero tolerance PREA policy, the ADC annually reviews and/or adopts new policies and procedures to address the eliminate of rape and sexual assault, including:   Staff Training/Education; Inmate Education; Victim Support; Investigation Procedures/Training; Reporting Mechanisms and Confidentiality Issue; Prosecution of Perpetrators; Prevention; and Continuity of Counseling (*Id.*, ¶ 63).  The ADC's PREA Administrative Directive, AD 11-63, including a PREA checklist to ensure that PREA victims receive appropriate care and that investigators are able to secure evidence to increase the chances of apprehending perpetrators (*Id.*, ¶ 64).

As a part of its annual security audits, each facility assesses adequate staffing and video monitoring to protect inmates from sexual assaults (*Id.*, ¶ 65).  New inmates receive oral and written information on the Department's zero tolerance policy related to sexual abuse. Accommodations are made for those not fluent in English, persons with disabilities, and low literacy rates (*Id.*, ¶ 66).  When inmates allege sexual abuse, they are monitored to ensure that there is no retaliation for making such report (*Id.*, ¶ 67).

The ADC also has a policy, Administrative Directive 07-42, expressly prohibiting employees from engaging in intimate relationships with inmates (*Id.*, ¶ 68).  Administrative Directive 07-42 prohibits sexual harassment and sexual assault, and included a mandatory reporting requirement (*Id.*, ¶ 69).  All allegations of employee related sexual assault are promptly investigated and immediately reported to Internal Affairs (*Id.*, ¶ 70).  Staff are trained on the policy and a copy is maintained in the unit law library (*Id.*).

Viewing the facts in the light most favorable to Ms. Villarreal, the Court cannot conclude that a reasonable fact finder could find in her favor as to any ADC defendant on her substantive due process and right to privacy claim.

## B.        Eighth Amendment Cruel And Unusual Punishment Claims

Ms. Villarreal brings her Eighth Amendment claim against Warden Faust. The Eighth Amendment prohibits the infliction of cruel and unusual punishment.  U.S. Const. amend. VIII.  "'[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'"  *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney,* 509 U.S. 25, 31 (1993)).  Prison officials must provide humane conditions of confinement, including protecting inmates from violence. *See Jensen v. Clarke*, 94 F.3d 1191, 1197 (8th Cir. 1996).  Unnecessary and wanton inflictions of

pain, including inflictions of pain without penological justification, "'constitute[ ] cruel and unusual punishment forbidden by the Eighth Amendment.'"  *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offense against society.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

The Eighth Circuit has held on multiple occasions that the sexual assault of an inmate by a guard violates the inmate's constitutional right to be free from cruel and unusual punishment.  *See Williams v. Prudden*, 67 Fed. Appx. 976, 977 (8th Cir. 2003) (per curiam) (holding that an inmate "sufficiently stated an Eighth Amendment claim by alleging that [the guard] forcibly ground his pelvis against her, grabbed her breast, verbally demanded sexual favors, made physical sexual advances, and attempted to force himself upon her"); *Berryhill v. Schriro*, 137 F.3d 1073, 1076 (8th Cir. 1998) ("Certainly, sexual or other assaults [by civilian prison employees] are not a legitimate part of a prisoner's punishment, and the substantial physical and emotional harm suffered by a victim of such abuse are compensable injuries.").

A prison official may also violate an inmate's rights under the Eighth Amendment by failing to protect an inmate from harm.  A prison official "may not be held liable under § 1983 for the constitutional violations of a subordinate on a *respondeat superior* theory."  *Ambrose v. Young*, 474 F.3d 1070, 1079 (8th Cir. 2007) (quotation omitted).  A prison official, nonetheless, violates the Eighth Amendment by failing to protect an inmate from a substantial risk of serious harm to the inmate.  *See Blades v. Schuetzle*, 302 F.3d 801, 803 (8th Cir. 2002).  To prevail on a claim of failure to protect, prisoners must demonstrate that they are incarcerated under conditions posing a substantial risk of serious harm and that the prison officials subjectively knew of and disregarded that safety risk.  *Farmer*, 511 U.S. at 834–35; *see also Jensen v. Clarke*, 94 F.3d 1191,

1197 (8th Cir. 1996) (explaining two essential requirements necessary to state a failure-to-protect case).

A violation of the Eighth Amendment based on a failure to protect has two parts. First, the conditions that result from the failure to protect the inmate must pose a substantial risk of serious harm to the inmates. *Farmer*, 511 U.S. at 834. "This objective requirement ensures that the deprivation is sufficiently serious to amount to a deprivation of constitutional dimension." *Jensen,* 94 F.3d at 1197. An obvious risk of a harm justifies an inference a prison official subjectively disregarded a substantial risk of serious harm to the inmates. *See Hope*, 536 U.S. at 738. Nevertheless, "[a] single incident, or a series of isolated incidents, usually provides an insufficient basis upon which to assign supervisor liability." *Howard v. Adkison*, 887 F.2d 134, 138 (8th Cir. 1989). "However, as the number of incidents grow[s], and a pattern begins to emerge, a finding of tacit authorization or reckless disregard becomes more plausible." *Id*.; *see also Lenz v. Wade*, 490 F.3d 991, 995–96 (8th Cir. 2007).

Second, the subject prison official must have exhibited a sufficiently culpable state of mind, that is, the prison official must have been deliberately indifferent to a substantial risk of serious harm to the inmates. *See Farmer*, 511 U.S. at 834. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "This subjective state of mind must be present before a plaintiff can be successful because only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Blades*, 302 F.3d at 803 (internal quotation marks omitted). This requisite state of mind is akin to recklessness, which is "more blameworthy than

negligence," yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmates.  *See Farmer*, 511 U.S. at 835, 839–40.

The Court's analysis of this Eighth Amendment claim as to Warden Faust is substantially similar to the Court's analysis of Ms. Villarreal's Fourteenth Amendment claim as to all ADC defendants.  At this stage of the litigation, Ms. Villarreal is required to meet proof with proof.  She has failed to do so.  She has failed to come forward with record evidence from which a reasonable factfinder could determine there was an obvious risk of a harm to her from Mr. Dewitt that justifies an inference that Warden Faust subjectively disregarded a substantial risk of serious harm.  Ms. Villarreal also has failed to come forward with record evidence from which a reasonable fact finder could determine that Warden Faust exhibited a sufficiently culpable state of mind, that is, that he was deliberately indifferent to a substantial risk of serious harm.  Viewing the facts in the light most favorable to Ms. Villarreal, the Court cannot conclude that a reasonable fact finder could find in her favor as to Warden Faust on her Eighth Amendment claim.

### C.    Training, Supervision, And Retention Claims

Ms. Villarreal also brings claims regarding training, supervision, and retention against all ADC defendants.  To the extent Ms. Villarreal characterizes these as claims for "negligent training, supervision, and retention claims against all ADC defendants," there is no basis for liability under § 1983 (Dkt. No. 74, at 4).  Negligent conduct fails to establish a claim under § 1983.  *Young v. City of Little Rock*, 249 F.3d 730, 734 (8th Cir.2001); *Estes v. Moore*, 993 F.2d 161, 163–64 (8th Cir.1993) (holding district court correctly excluded evidence of negligent in action brought under section 1983); *Schultz v. Amick*, 955 F. Supp. 1087, 1096 (N.D. Iowa 1997) (collecting cases).

Likewise, to the extent Ms. Villarreal intends these allegations to support a claim for alleged violations of her substantive due process rights by a public official, she must show:  (1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the public official was shocking to the "contemporary conscience."  *McLean, et al. v. Gordon, et al.*, 548 F.3d 613, 616 (8th Cir.2008) (citations omitted).  To establish a substantive due process claim, she "must show that the behavior of the [official] was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience, and that the conduct violated one or more fundamental rights."  *Clemmons v. Armontrout*, 477 F.3d 962, 965 (8th Cir. 2007) (quoting *Terrell v. Larson*, 396 F.3d 975, 978 (8th Cir. 2005) (quotations and citations omitted) and *Moore v. Briggs*, 381 F.3d 771, 773 (8th Cir. 2004)).  To the extent Ms. Villarreal characterizes these claims as based on alleged negligent conduct, "[m]ere negligence is not conscience-shocking and cannot support a claim alleging a violation of a plaintiff's substantive due process rights." *McLean*, 548 F.3d at 616 (quoting *Avalos v. City of Glenwood*, 382 F.3d 792, 799 (8th Cir. 2004)).

To the extent Ms. Villarreal alleges a due process violation by the ADC defendants for failure to take corrective action regarding Mr. Dewitt's conduct, on the record evidence before the Court construing all reasonable inferences in favor of Ms. Villarreal, the Court determines that the ADC defendants are entitled to summary judgment in their favor on this claim.  The law is clear that *respondeat superior* is not a recognized basis for § 1983 liability.  *See Keeper v. King*, 130 F.3d 1309 (8th Cir. 1997).  To state a cognizable claim against a defendant in a supervisory role, an inmate must allege that the defendant was personally involved in the constitutional violation or became aware of the constitutional violation and, with deliberate indifference, failed to take corrective action.  *See, e.g., Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993).  To assert a constitutional violation based on a defendant's failure to supervise and train staff, a plaintiff must

show that the supervisor:  (1) received notice of a pattern of unconstitutional acts committed by subordinates; (2) demonstrated deliberate indifference to or tacit authorization of the offensive acts; (3) failed to take sufficient remedial action; and (4) that such failure proximately caused injury to Ms. Villarreal.  *See Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010).

Even if Ms. Villarreal could demonstrate that the training the ADC defendants received was minimal at best, that finding alone will not satisfy a § 1983 claim for failure to train.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390–91 (1989) ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [local government]. . . ."). Instead, to satisfy the standard, Ms. Villarreal must demonstrate that in light of the duties assigned to specific officers the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers "can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390.  Ms. Villarreal must demonstrate that the ADC defendants "'had notice that its procedures were inadequate and likely to result in a violation of constitutional rights.'"  *Andrews,* 98 F.3d 1069, 1076 (8th Cir. 1996) (quoting *Thelma D. v. Bd. of Educ.*, 934 F.2d 929, 934 (8th Cir. 1991)); *see also Parrish*, 594 F.3d at 997–98.

Although Ms. Villarreal alleges that the ADC defendants had notice of widespread complaints about Mr. Dewitt,[12] she admits in her testimony that Mr. Dewitt mentioned "there were some complaints done by women about him and even he was under investigation for several times." (Dkt. No 71-1, at 69).  Ms. Villarreal did not know why Mr. Dewitt was being investigated

---

[12]   In her operative amended complaint, Ms. Villarreal alleges that the conduct she suffered "was due to the deliberate indifference of ADC and McPherson staff, and the repeated investigations by the USDOJ, without any measures taken to remedy the situation, shows a pattern of failure to train and adequately protect the plaintiff, and other inmates, from risk of abuse by employees, and that this can and does lead to a violation of the prisoner's constitutional rights, including the plaintiff." (Dkt. No. 21, ¶ 55; *see also* ¶¶ 51-55 (detailing allegations)).

or whether those investigations related to sexual assault or inappropriate sexual behavior (*Id.*).  Ms. Villarreal has not read the 2003 report from the Department of Justice related to an investigation at the McPherson Unit (*Id.*).  She also has not read a 2010 Bureau of Justice Statistics Report (*Id.*, at 69–70).  Ms. Villarreal admits that the only other inmate she is aware of who complained of sexual misconduct involving Mr. Dewitt is Ms. Arnett (*Id.*, at 81).  Ms. Villarreal did not disclose Mr. Dewitt's conduct to other inmates at the time he was allegedly abusing her (*Id.*, at 60–62).  No other inmate disclosed incidents to her (*Id.*, at 89).

The Court has reviewed carefully the allegations Ms. Villarreal makes in her operative amended complaint.  However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford*, 747 F.2d at 447.  Ms. Villarreal has failed to meet proof with proof at the summary judgment stage.

On the record before the Court, even with all inferences construed in favor of Ms. Villarreal, no reasonable juror could find that the ADC defendants had notice sufficient to find in Ms. Villarreal's favor on her claims regarding training, supervision, and retention.  Further, Ms. Villarreal fails to present sufficient evidence from which a reasonable factfinder could find in her favor as to demonstrated deliberate indifference to or tacit authorization of the offensive acts and a failure to take sufficient remedial action.

For all of these reasons, to the extent Ms. Villarreal states a federal claim against all ADC defendants regarding training, supervision, and retention, construing all reasonable inferences from the record evidence in favor of Ms. Villarreal, the Court grants summary judgment in favor of the ADC defendants on this federal claim.

### D.    ACRA Claims

Neither the ADC defendants nor Ms. Villarreal argue to the Court that the Court should apply the law differently to her ACRA claims.  To the extent Arkansas law is consistent with federal law governing Ms. Villarreal's claims, the Court grants summary judgment in favor of the ADC defendants on these claims.  Further, based on the record evidence construed in the light most favorable to Ms. Villarreal, the Court determines the ADC defendants are entitled to immunity from Ms. Villareal's ACRA claims.

### E.    Remaining State Law Claims

Having granted summary judgment in favor of the ADC defendants on Ms. Villarreal's federal claims, the Court declines to exercise jurisdiction over Ms. Villarreal's remaining state law claims, including but not limited to any state law claims for negligent training, supervision, and retention and any claims under the ACRA based on an interpretation of Arkansas law inconsistent with the federal law applied by this Court.  The sole basis for the Court's jurisdiction over any remaining state  law claims is 28   U.S.C.   §   1367(a),   which   permits   a   district   court to exercise supplemental jurisdiction over claims that are a part of the same case or controversy as the claims that fall within the district court's original jurisdiction.  Under 28 U.S.C. § 1367(c)(3), the Court may, in its discretion, decline to exercise supplemental jurisdiction over a claim if "the district  court  has dismissed all  claims over which  it  has  original jurisdiction."    *See Zutz  v. Nelson*, 601 F.3d 842, 850 (8th Cir.2010).   "The district court is afforded broad discretion in determining whether to exercise supplemental jurisdiction." *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir.2011).  The Court exercises its discretion here to dismiss without prejudice all of Ms. Villarreal's remaining state law claims against the ADC defendants.

## VI.     Conclusion

The Court grants summary judgment in favor of the ADC defendants on Ms. Villareal's Fourteenth Amendment claims; Eighth Amendment claims; federal claims related to training, supervision, and retention; and ACRA claims to the extent Arkansas law is construed in the same way as the federal law applied by this Court in its Order.  Having granted summary judgment in favor of the ADC defendants on Ms. Villarreal's federal claims, the Court declines to exercise jurisdiction over Ms. Villarreal's remaining state law claims, including but not limited to any state law claims for negligent training, supervision, and retention and any claims under the ACRA based on an interpretation of Arkansas law inconsistent with the federal law applied by this Court.  The Court dismisses without prejudice Ms. Villarreal's remaining state law claims.

It is so ordered this 31st day of March, 2022.

Kristine G. Baker
United States District Judge